UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61376-CIV-SELTZER

CONSENT CASE

EDWARD SANTANA on behalf of himself
and all others similarly situated,

       Plaintiff,

vs.

RCSH OPERATIONS, LLC, d/b/a RUTH'S
CHRIS STEAKHOUSE, a Florida corporation,

       Defendants.
_____/

ORDER ON DEFENDANT'S MOTION FOR SANCTIONS

THIS CAUSE is before the Court on Defendant's Motion for Sanctions (DE 28) pursuant to the consent of the parties.  The Court having reviewed the Motion, Plaintiff's Response, and Defendant's Reply and being otherwise sufficiently advised, it is hereby ORDERED that the Motion is DENIED for the reasons set forth below.

Plaintiff Edward Santana was employed as a waiter at one of Defendant's Ruth's Chris Steakhouses in Coral Gables, Florida.  He brings this action against his former employer alleging violations of the Fair Labor Standards Act ("FLSA) and Title VII of the Civil Rights Act of 1964 ("Title VII") (for sexual harassment and retaliation).

Defendant first moves for dismissal of Plaintiff's FLSA claims based on his (alleged) spoliation of evidence or, in the alternative, it requests an adverse inference instruction. Defendant additionally moves the Court to impose sanctions, including dismissal of this action, for Plaintiff's (alleged) failure to participate in discovery, or in the alternative, it

requests the Court to compel Plaintiff to complete his deposition and to supplement his interrogatory answers.   Finally, Defendant requests the Court to award the reasonable costs and fees it incurred in bringing the instant Motion.

After the filing of the instant Motion, the parties conferred (as directed by the Court), at which time Plaintiff agreed to complete his deposition and to supplement his answers to interrogatories.   Therefore, only the spoliation issue and Defendant's entitlement to reasonable costs and expenses remain for the Court's consideration.

Spoliation of Evidence

"Spoliation is defined as the 'destruction of evidence' or the 'significant and meaningful alteration of a document or instrument.'" Green Leaf Nursery v. E.I. Dupont de Nemours and Co., 341 F.3d 1292, 1308 (11th Cir. 2003) (quoting Aldrich v. Roche Biomedical Labs., Inc., 737 So. 2d 1124, 1125 (Fla. 4th DCA 1999)).  A district court has broad discretion in deciding whether to impose sanctions for the spoliation of evidence. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005).  "This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases.  Accordingly, sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Id. (internal citation omitted).  In the Eleventh Circuit, spoliation sanctions may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Id. at 945.

Federal law governs the imposition of sanctions for spoliation of evidence, even in diversity cases.  Id. at 944.   Because the the Eleventh Circuit has not set forth specific guidelines for the imposition of spoliation sanctions, the "courts may look to state law for

2

guidance so long as the principles are consistent with federal spoliation principles." Southeastern Mech. Servs., Inc. v. Brody, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009). "Although the Eleventh Circuit has not expressly found Florida law to be wholly consistent with federal spoliation principles, lower federal courts have routinely looked to Florida law for guidance on when to impose sanctions for spoliation." Socas v. Northwestern Mut. Life Ins. Co., No. 07-20336-Civ, 2010 WL 3894142, at *3 (S.D. Fla. Sept. 30, 2010) (Simonton, M.J.); see also Wilson v. Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at *2 (M.D.Fla. Oct. 17, 2008) ("Florida law on spoliation is consistent with federal law.") (footnote omitted); FTC v. Nationwide Connections, Inc., No. 06-80180-CIV, 2007 WL 4482607, at *1 (S.D.Fla. Dec. 19, 2007) (Ryskamp, J.) (stating that "Florida based federal courts look to Florida law for guidance on when to impose sanctions for spoliation.").

Under Florida law, the party seeking spoliation sanctions must prove "(1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence;[1] and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense." Managed Care Solutions, Inc. v. Essent Healthcare, Inc., ___ F. Supp. 2d ___, No. 09-60351, 2010 WL 3368654, at *5 (S.D. Fla. Aug. 23, 2010) (O'Sullivan, M.J.) (citing Walter v. Carnival Corp., No. 09-20967-Civ, 2010 WL 2927662, at *2 (S.D. Fla. July 23, 2010)) (Hoeveler, J.); see also Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 781 (Fla. 4th DCA 2006). Even if these three elements are met, before a court

---

[1] "A party has an obligation to retain relevant documents . . . where litigation is reasonably anticipated." Managed Care, 2010 WL 3368654, at *6; see also Wilson, 2008 WL 4642596, at *2 (stating that "[t]he law imposes a duty upon litigants to keep documents that they know, or reasonably should know, are relevant to the matter.") (footnote omitted).

may impose spoliation sanctions, the movant must also show, through direct or circumstantial evidence, that the alleged spoliator acted in bad faith. See Flury, 427 F.3d at 944, 946-47; Penalty Kick Mgmt Ltd. v. Coca Cola Co., 318 F.3d 1284, 1294 (11th Cir. 2003) (adverse inference not warranted where no showing of bad faith); Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) ("In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.  Mere negligence in losing or destroying the records is not enough for an adverse inference. . . .") (internal citation and quotation marks omitted); see also Managed Care, 2010 WL 3368654, at *4 ("[a] party's failure to preserve evidence rises to the level of sanctionable spoliation 'only where the absences of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence.") (quoting Walter, 2010 WL 2927662, at *2); Hogan v. BellSouth Corp., No. 1:01-CV-1322-RWS, 2004 WL 3561174, at *2 (N.D. Ga. July 29, 2004) ("[B]ad faith essentially requires that a party 'tampered with the evidence.'") (quoting Bashir, 119 F.3d at 931)).

Prior to filing this litigation, Plaintiff brought a case against Defendant in Florida's small claims court asserting claims for "Minimum Wage violation, Breach of Fiduciary Duty and contract, Record Keeping Violation, EXCESSIVE Mandatory/Illegal 'Tip Out,' SEXUAL HARASSMENT, DISCRIMINATION, and Hostile Work Environment."  Statement of Claim (DE 28-1).  Plaintiff voluntarily dismissed that case and then filed this action.  The "evidence" that Defendant now contends Plaintiff spoliated consists of a paper on which Plaintiff purportedly "calculated" or "itemized" his damages when he brought his case in small claims court.  In support of its request that this Court dismiss Plaintiff's FLSA claims (or give an adverse inference instruction), Defendant relies solely on Plaintiff's deposition

testimony.  When questioned by Defendant's attorney about how he calculated the $5,000

in damages he sought in his small claims case and on what those damages were based,

Plaintiff responded:

> A.    Emotional distress, punitive damages, back wages. The tip-out that I – that I was tipping out.  Actually, I kind of waived the excess on this, because I wanted to get it – the actual claim was a lot higher than this, but I waived the excess.  Meaning that the – the number that I had was higher than $5,000.

> Q.    What number?

> A.    I don't – remember the – I don't have the number off the top of my head right now, but I know it was more than $5,000.  I was waiving the excess.  So I – I – was asking – asking for $5,000.

> Q.    Okay.  Do you have a number written down somewhere?  You keep talking about a number.

> A.    I don't – have that number on me right now.

> Q.    Okay.  That's not my question.  My question is:  Do you have a number written down of what you calculate your damages at?

> A.    I had a number written down, but it's – I threw it away.

> Q.    When did you throw it away?

> A.    I think when I dismissed [the small claims] case .

> Q.    Well, sir, when you dismissed this case, it was filed, the lawsuit, in another court, right?

> A.    I voluntarily – I put a motion for voluntary dismissal without prejudice and that's why – that's why I discarded my paperwork.

> Q.    What other paperwork did you discard besides your number of damages?

5

A.   Just the paper that – that I calculated the damages on. That was it.

Q.   Is that the only paper that you threw away?

A.   That I can recall right now.

Q.   And when you threw it away sir, you still intended to bring litigation, right, because you represented to the small claims court that the reason you were dismissing it was because you were filing suit in another court, right?

A.   Correct.

Santana Dep. 317-319 (DE 42-7).

In its Motion, Defendant characterizes the alleged spoliated evidence as "written notes Plaintiff claims to have made that itemized his alleged damages." Motion at 11 (DE 28). Plaintiff contends that Defendant's version of Plaintiff's testimony is "a far cry from Plaintiff's actual testimony." Response at 7 (DE 35). Plaintiff contends that he did not testify that he had made written notes that itemized his alleged damages; to the contrary, on three occasions during his deposition, he denied having such written notes. First, Plaintiff testified:

Q.   Okay.  And you didn't think it was important to keep some sort of handwritten or typed notes about the hours you worked and that sort of thing while at Ruth's Chris"

A.   No.  I've just – I've always kept mental notes.

Santana Dep. 158-59 (DE 42-7). Plaintiff next testified:

Q.   Okay.  And what evidence do you have to support that?

A.   What evidence?

Q.   Yes.

6

> A.    The evidence is I was there for more than those hours and I wasn't paid for it.
>
> Q.    That's what I'm saying.  What evidence do you have that you were there more than 28 hours?
>
> A.    I – I did have originally – when I first started, I would keep my clock-out slips.  But those slips, they fade after like a week or two.  It's kind of like on a shiny kind of paper it prints out on.  And eventually the ink fades.  So it's like blank basically, the paper.  It's like when you get a receipt from the store, you keep it over time, it starts fading, the ink on it, and basically it a blank piece of paper eventually.
>
> Q.    Okay.  Well, did you transfer the hours that you worked on to any document?
>
> A.    No. I made mental notes of that.

Santana Dep. 186 (DE 42-7).  Finally, Plaintiff testified:

> Q.    Okay.  And you didn't think it would be important – you said you kept mental notes.  Did you have any mental notes of specific days that a manager clocked you out early?
>
> A.    I said earlier I had kept mental notes, but I never kept mental notes of the exact dates.  I said approximate times – time periods.

Santana Dep. 324 (DE 42-7).

Defendant replies that "it is quite clear that Plaintiff had, at one point, written notes pertaining to his alleged damages incurred in connection with his FLSA claim."  Reply at 3 (DE 36).   According to Defendant, "by Plaintiff's testimony, these notes would support his allegation that he 'waived' some 'excess' damages for all hours worked and there was some allegedly unlawful tip pool." Id.

Reading together the deposition testimony cited by both parties, the Court believes

7

that Defendant has overstated the contents of the paper at issue – characterizing it as an "itemization" of Plaintiff's damages, "the only evidence" to support Plaintiff's claim that his managers clocked him out early, "a record" of Plaintiff's damages "representing the supposed hours he is owed compensation," "notes" that would support his claim that he did not receive wages for all hours worked and that there was some unlawful tip pool.  It is clear from Plaintiff's entire deposition testimony that he did not keep written records or notes from which he could ascertain the specific (alleged) overtime hours he worked or identify the specific times his managers (allegedly) clocked him out early; rather, he only kept "mental notes."  In his deposition testimony as to the paper at issue, Plaintiff referred several times to a "number" (in excess of $5,000); this number purportedly represented not only his FLSA damages (for back wages and his tip out), but also punitive and emotional distress damages.   Even viewing Plaintiff's testimony in the light most favorable to Defendant, it appears the paper contained, at best, Plaintiff's "guesstimate" of his FLSA damages derived from his memory alone.

Moreover, the Court concludes that Defendant has failed to demonstrate that the paper Plaintiff discarded is crucial to its defense.  See Walter, 2010 WL 2927962, at *2 (citation omitted) (requiring movant to show "that the evidence was crucial to the movant being able to prove its prima facie case or defense.").  It is not sufficient that the spoliated evidence would have been relevant to a claim or defense.  See Floeter v. City of Orlando, No. 6:05-CV-400-Orl-22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (finding that although relevant, spoliated evidence was not crucial).   Here, Defendant contends that Plaintiff's "destruction of evidence" results in its "inability to adequately defend itself against Plaintiff's claim that he was not paid for all hours worked."  Motion at 13.  More specifically

8

Defendant states: "Given that Plaintiff intentionally discarded written evidence to support what Plaintiff now asserts is the basis of his claim [not being paid for all hours worked], Ruth's Chris cannot know which managers could refute Plaintiff's testimony about the hours he worked and/or allegedly clocking him out while he was working because Plaintiff cannot recall any date on which he allegedly worked, but was not paid."   Id. at 13-14. Defendant contends that should this case proceed to trial, it would be required "to call every single manager that ever worked during Plaintiff's employment to testify" because "there is no way to ascertain which dates Plaintiff claims he worked off the clock but was not paid."  Reply at 3-4 (DE 36).

First, Defendant has not established that the paper Plaintiff discarded contains any information relating to the identity of the managers who allegedly clocked Plaintiff out early or the dates they allegedly took such action.  And Plaintiff has acknowledged that it could call Plaintiff's managers to testify in defense of Plaintiff's claim, a task that should not be onerous, given that Defendant employed Plaintiff for only a four month period. Accordingly, the Court will not impose any sanction for the (alleged) spoliation of "evidence."

<u>Discovery Sanctions</u>

In addition to requesting that the Court dismiss Plaintiff's claims on spoliation grounds, Defendant requests the Court to dismiss Plaintiff's claims "for his failure to participate in discovery."  Motion at 1 (DE 28).  Such "failure to participate" consists of Plaintiff's failure to complete his deposition and his failure to supplement two interrogatory answers.

Pursuant to Federal Rule of Civil Procedure 37(d), a court may impose sanctions

(including dismissing claims), on a party who fails to attend his properly noticed deposition. Because dismissal is a severe penalty, however, a case may be dismissed with prejudice only where there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983); see also Navarro v. Cohan, 856 F.2d 141, 142 (11th Cir. 1988) ("The sanction of dismissal is an extreme remedy and should not be imposed if lesser sanctions will suffice."); In re Polyproplylene Carpet Antitrust Litig., 181 F.R.D. 680, 696 (N.D. Ga. 1998) ("The decision to dismiss a claim . . . 'ought to be a last resort – ordered only if non-compliance with discovery orders is due to willful or bad faith disregard for those orders.'") (quoting Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986)).  The Court does not find under the circumstances here (as discussed below) that the harsh sanction of dismissal is warranted.

In the alternative, Plaintiff moves to compel Plaintiff to complete his deposition and to supplement his answers to Interrogatories Nos. 15 and 16.  Subsequent to the filing of the instant Motion the parties conferred, and Plaintiff agreed to complete his deposition and to supplement his answers to the interrogatories.  The parties, however, were unable to agree whether Plaintiff should pay Defendant $1,647.00 for attorneys' fees incurred in bringing the instant (alternative) motion to compel and $165.40 for costs (allegedly) caused by Plaintiff's failure to appear at the continuation of his deposition.

Rule 37(a)(5) provides that if a court grants a motion to compel discovery "– or if the disclosure or requested discovery is provided after the motion was filed – the court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees,"

10

<u>unless</u> the court finds that "that opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(ii) and (iii).

On September 7, 2010, Defendant propounded its First Set of Interrogatories and Requests for Production; Plaintiff provided his responses on October 26, 2010. On October 28, 2010, Defendant's counsel wrote to Plaintiff's counsel pointing out certain deficiencies in five interrogatory answers and a response to one request for production; Defendant's counsel requested that Plaintiff supplement his responses by November 1, 2010. <u>See</u> October 29, 2010 letter (DE 28-5).

On November 2, 2010, Plaintiff appeared for his deposition; the deposition was commenced at 10:00 a.m. and was adjourned at 5:50 p.m. – lasting 7 hours and 50 minutes. Under Federal Rule of Civil Procedure 30(d)(1) and Local Rule 26.1.K, a deposition is limited to one day of seven hours, unless the parties stipulate or the court orders otherwise. The advisory note to Rule 30(d) provides that "[t]his limitation contemplates that there will be reasonable breaks during the day for lunch and other reasons and that the only time to be counted is the time occupied by the actual deposition." Fed. R. Civ. P. 30(d) Advisory Notes, 2000 Amendment. Plaintiff's deposition transcript reflects that Plaintiff's counsel suggested a 30 minute lunch period and that the parties took 4 other breaks. The transcript, however, does not indicate the actual length of the lunch period, and it does not indicate the actual length of the breaks, stating only that "brief recesses" were taken. The Court, therefore, cannot determine whether the actual time of

11

Plaintiff's deposition testimony was less than 7 hours.[2]    According to Defendant, the parties agreed at the end of the day that Plaintiff's deposition would be continued; Defendant estimates that it is entitled to continue Plaintiff's deposition for an additional 30 to 60 minutes.

By a November 3, 2010 e-mail, Defendant's counsel asked Plaintiff's (then) counsel (Chad Levy) to contact her about a date to continue Plaintiff's deposition; she indicated it should take approximately another 30 minutes and suggested that it be "squeezed in" on November 16, the day that Plaintiff was to depose Defendant's corporate representative. That same day (November 3), Plaintiff's counsel (by e-mail) informed Defendant's counsel that he had certain issues he needed to discuss with his client before proceeding further and that he would get back to her at the end of the week.  See November 3, 2010 e-mails (DE 28-6).  The next day (November 4), Plaintiff's counsel informed Defendant's counsel (by e-mail) that he would be moving to withdraw his representation of Plaintiff and that Plaintiff would be proceeding *pro se*.  He indicated that he would cancel the November 16 deposition of Defendant's corporate representative, but if Defendant's counsel still wanted to depose Plaintiff on November 16 he would appear on behalf of Plaintiff simply to conclude the deposition. Defendant's counsel responded by suggesting that Plaintiff's deposition be taken on an earlier date; Plaintiff's counsel replied that he did not yet know about the deposition date.  See November 4, 2010 e-mails (DE 28-7).

On November 5, 2010, Defendant's counsel notified Plaintiff's counsel that

---

[2]   The Court notes if the lunch period and the four breaks did not exceed 50 minutes, the actual deposition time would have been at least 7 hours; hence, Defendant would not be entitled to continue Plaintiff's deposition, absent a stipulation of the parties.

Defendant did not oppose his motion to withdraw but it did oppose him appearing on behalf of Plaintiff for the continuation of the deposition.  Defendant's counsel also informed Levy that she would notice the continuation of Plaintiff's deposition for November 16.  Levy responded that his client opposed his withdrawal and that he would not be appearing at the deposition on behalf of Plaintiff.  See November 5, 2010 e-mails (DE 28-8).  That same day, attorney Levy moved to withdraw his representation of Plaintiff due to "fundamental differences between Plaintiff and his counsel."  Motion to Withdraw (DE 23).[3]

On November 6, 2010, Defendant served a "Notice of Taking Deposition Continuance of Edward Santana" on both Plaintiff and attorney Levy; Defendant set the continuation deposition for November 16, 2010.  (DE 28-9).   According to Defendant, on November 9, Plaintiff Santana contacted Defendant's counsel and informed her that he would not be appearing for the rest of his deposition; he denied that the parties had ended his deposition to accommodate his schedule and that of his attorney, and he denied that he had agreed to complete his deposition.  When asked whether he would appear on a day other than November 16, Plaintiff stated he would not.   Defendant's counsel advised Plaintiff that Defendant would seek sanctions for his failure to appear.   On November 11, attorney Levy (by e-mail) informed Defendant's counsel that he did not think Plaintiff would be appearing for the continuation of his deposition, even though he (Levy) had advised him to attend.  Attorney Levy stated that he again offered to appear at the deposition with

_____

[3]  The Court subsequently ordered Plaintiff to respond to his counsel's motion to withdraw, indicating whether he had any objections thereto; Plaintiffs' response was due November 22, 2010 (DE 24 and 26).  Plaintiff did not object to the motion, and on December 6, 2010, the Court granted attorney Levy's motion and relieved him from any further representation of Plaintiff herein (DE 31 and 32).  On that same day, Plaintiff's current counsel, Harry Malka, entered his appearance on behalf of Plaintiff (DE 30).

Plaintiff, but Plaintiff declined.

By letter dated November 12, 2010, Defendant's counsel reminded Plaintiff's counsel that Defendant was still waiting for Plaintiff to supplement Interrogatories Nos. 15 and 16. She advised that if Defendant had not received supplemental answers by November 19, Defendant would file a motion to compel. See November 12, 2010 letter (DE 28-11).

According to Defendant, on that same date (November 12) Plaintiff Santana contacted Defendant's counsel and informed her that he might appear for the completion of his deposition and that he would let her know on November 15. On November 15, Plaintiff informed Defendant's counsel that he would not be appearing for the November 16 deposition. Nevertheless, on November 16, Defendant's counsel appeared for the deposition and made a record of Plaintiff's non-appearance. See November 16, 2010 Dep. Transcript (Ex. 28-12). Plaintiff later that day contacted Defendant's counsel to state that he wanted to take the deposition of Defendant's general manager. Defendant's counsel advised Plaintiff that Defendant believed that it was entitled to complete his deposition before Plaintiff could depose any of Defendant's employees. According to Defendant, Plaintiff agreed to complete his deposition on a date that he could take the manager's deposition.[4] Defendant states that it has given Plaintiff dates on which the manager would be available but as of November 23 (the date of the filing of the instant Motion) Plaintiff had not agreed on a date to complete his deposition and to take the manager's deposition.

---

[4] Plaintiff contends that the only condition he placed on completing his deposition was that the deposition be postponed for a few weeks to permit him to obtain new counsel.

Plaintiff also had not supplemented his responses to Interrogatories No. 15 and 16.[5]

The Court concludes that under the circumstances here an award of Rule 37 sanctions would be unjust.  Defendant served its notice and set the continuation of Plaintiff's deposition knowing that Plaintiffs' attorney had moved to withdraw his representation. And Defendant objected to attorney Levy representing Plaintiff at the continuation deposition.  Moreover, Plaintiff was faced with a Hobson's choice; he could appear unrepresented at the deposition, appear with an attorney who had moved to withdraw his appearance and with whom he had "fundamental differences," or he could fail to appear and face possible sanctions.  Similarly, the extended deadline set by Defendant for Plaintiff to supplement his answers to the two interrogatories also fell during the period when Plaintiff's representation by counsel was in flux.  Accordingly, the Court will not impose Rule 37 sanctions.

Based on the foregoing, Defendant's Motion for Sanctions (DE 28) is DENIED in its entirety.

DONE AND ORDERED in Fort Lauderdale, Florida, this 18th day of February 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record

---

[5] As stated above, Plaintiff has now agreed to complete his deposition and to supplement his answers to the interrogatories.